**In re Larry Dean ROGERS, Sr., Bankrupt.**

**REED LUMBER CO., INC., Plaintiff,**

v.

**Larry Dean ROGERS, Sr., Defendant.**

**Bankruptcy No. 79–00629.**

United States Bankruptcy Court, W. D. Virginia.

Dec. 27, 1979.

Alan D. Gillis, Christiansburg, Va., for plaintiff.

Bentley Hite, Christiansburg, Va., for bankrupt.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before this Court is whether the attorney for the creditor Reed Lumber Co., Inc. (Reed) has carried the burden of proving excusable neglect for a late filing of a complaint objecting to the discharge of bankrupt, Larry Dean Rogers, Sr.

The facts are simple and not in dispute. Larry Dean Rogers, Sr. (hereafter sometimes referred to as bankrupt) filed a petition in the U.S. Bankruptcy Court for the Western District of Virginia on August 2, 1979, to be adjudicated a bankrupt. The first meeting of creditors was held August 14, 1979, and the Court fixed October 14, 1979, as the last day for filing complaints objecting to the discharge of the debts of the bankrupt. On November 13, 1979, twenty-eight (28) days after the last day for objecting to discharge, the creditor filed the complaint in the instant case, objecting to bankrupt's discharge on grounds that the bankrupt had obtained the signature of the President of Reed under false pretense. From August 14, 1979, through November 13, 1979, the criminal fraud case was working its way through the General District Court for Montgomery County, Virginia. Final disposition in that case was had November 13, 1979.

In order to determine whether the late filing is permissible within the purview of the Bankruptcy Act, we must look to the Rules of Bankruptcy Procedure. Rule 906 of the Bankruptcy Rules in pertinent part provides:

"(b) *Enlargement.* When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without application or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or *upon application* made after the expiration of the specified period permit the act to be done where the failure to act was the result of *excusable neglect . . . .*" (emphasis added)

While the Court has discretion under (b)(1) of Rule 906 to grant an extension of time within which a specified act is to be done where the original period has not expired, the same is not necessarily true where the original period has expired. *In re Charles Douglas Gentry*, 1 C.B.C. 433

(W.D.Va.1974). Though the Court is vested with some discretionary power under (b)(2) of the Rule, such a grant must be made upon application and can only be granted where excusable neglect is shown. As the Court noted in *In the Matter of Walter Francis McFarland*, 4 C.B.C. 77 (W.D.Wisc. 1975), the party requesting the extension has the burden of showing a reasonable basis for the failure to comply within the time originally specified. *See generally*, 13 *Collier on Bankruptcy* 906.04(2) (14th ed. 1977).

Counsel for the creditor concedes that its objection to discharge was not timely filed. The first meeting of creditors was set for August 14, 1979, and October 15, 1979, was fixed as the last day for filing complaints objecting to the bankrupt's discharge. On November 13, 1979, the creditor's objection to discharge was prepared and mailed to the Court.

Notwithstanding its late filing, creditor's attorney contends that its complaint should be heard because the neglect in filing in a timely fashion was excusable. The basis for the attorney's excuse, as adduced at the hearing and from his memorandums is that he was uncertain of the posture a lower state court would take relative to a criminal fraud issue. In short, Reed had obtained a warrant against bankrupt charging him with unlawfully and feloniously obtaining the signature of the President of Reed on a lien waiver form. While this case was winding its way to final disposition at the state level, no objection to discharge of the bankrupt's debts was forthcoming. It matters not that Reed was awaiting the outcome of a lower state court decision. To protect itself, Reed should have filed its complaint objecting to discharge on or before October 15, 1979, or more practically, in the alternative, requested this Court, pursuant to Rule 906(b)(1) to extend the time for filing complaints until such time as the lower state court would rule on the fraud issue. The latter course of action would have to have occurred prior to the expiration of the original period, October 15, 1979.

■ This Court is of the opinion, supported by decisions in other jurisdictions, that the creditor through its attorney has not carried the burden of proving excusable neglect. The burden is, of course, upon those asking to be relieved because of it. *Martella v. Marine Cooks & Stewards Union, Seafarers International Union of North America, AFL–CIO*, 48 F.2d 729 (9th Cir. 1971); *In re Vasser*, 3 B.C.D. 147 (W.D.Va. 1977).

"Excusable neglect" has been defined in the case of *Beneficial Finance Co. v. Manning*, 4 B.C.D. 304 (1978):

> "The words 'excusable neglect' are words of art, and are subject to the interpretation of the trier. The court has interpreted 'excusable neglect' as meaning the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform."

Though the machinations of the lower state court were beyond the "reasonable control" of the attorney for the creditor, it was not beyond his reasonable control, but rather was his duty, to either timely file or request an extension of time for filing in this Court.

Even for the strict construction given the term "excusable neglect," *In re Martin*, 17 C.B.C. 73 (1978); *In re W. T. Grant Corp.*, 1 B.R. 516, 12 C.B.C. 687 (D.C.1979) some courts have been more liberal. Thus, where there was a reasonable misunderstanding between attorney and client, the bankruptcy court allowed an extension of time. *In the Matter of Ronald Marvin Starkey*, 1 C.B.C. 138 (W.D.Wisc.1973). Or, where an attorney was absent during the period when the original time allowed was elapsing coupled with a genuine misunderstanding of dates in the notice, the court in *In re Canifax*, 7 C.B.C. 410 (D.Or.1976) allowed an extension. Nowhere, however, is it recognized that counsel's heavy workload or his unfamiliarity with local practice constitutes excusable neglect. *See Maryland Casualty Co. v. Conner*, 382 F.2d 13 (10th Cir. 1967); *Accord, 9 Moore's Federal Practice* 204.13(1) (3rd ed. 1977).

Collier notes at 906.04(2) that where there is no adverse effect, prejudice, or surprise to the bankrupt, courts have more generously granted extensions. However, one cannot say that there was no surprise or prejudice to the bankrupt in the instant case when it received notice of an objection to its discharge a month after the filing deadline.

Complainant, Reed Lumber Co., Inc., did not file its objections to the discharge of Larry Dean Rogers, Sr., until November 13, 1979, more than three months after August 2, 1979, or 28 days after the deadline for filing such objections. Reed, not having timely filed and not having shown excusable neglect cannot now be heard to complain about the discharge.

The Court is accordingly constrained to hold that excusable neglect has not been shown when the facts are viewed in light of construction placed by other courts upon the question of "excusable neglect" and it is so ORDERED.